UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EFRAIN MELENDEZ, | : | 3:06cv964 (WWE) |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WARDEN GOMEZ, LT. JAMES | : | |
| RIELLY, OFC. KARL WAGNER,[1] | : | |
| OFC. CHRISTOPHER HARPER, | : | |
| OFC. ANGELO GIZZI, OFC. JAMES | : | |
| SANTOPIETRO, OFC. JEREMY | : | |
| CHICANO, | : | |
|     Defendants. | : | |

## MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT

In this action, plaintiff Efrain Melendez, an incarcerated prisoner at Garner Correctional Institution ("GCI"), alleges that defendants Warden Giovanny Gomez, Lieutenant James Rielly, and Officers Karl Wagher, Angelo Gizzi, James Santopietro, and Jeremy Chicano are liable to him pursuant to 42 U.S.C. § 1983. Specifically, he asserts that the defendants violated his right to be free from excessive force while incarcerated at GCI; and that Warden Gomez failed to train the officers on the use of force against the inmates. Plaintiff also asserts a state law claim for assault and battery.

Defendants have filed a motion for summary judgment arguing, inter alia, that plaintiff's claims are barred by the Prisoner Litigation Reform Act ("PLRA") because

---

[1]The complaint identifies this defendant as Officer Karl Wagner. However, in his affidavit, defendant spells his last name as Wagher. This ruling will refer to this defendant as Wagher.

1

plaintiff has failed to exhaust his administrative remedies.[2]  For the following reasons, the motion for summary judgment will be granted.

## FACTUAL BACKGROUND

The parties have submitted statements of fact in compliance with the Local Rules of Civil Procedure and accompanying exhibits, including a video and affidavits.  These materials reveal the following factual background.

On April 14, 2005, a Cell Extraction Team ("CET") consisting of Lieutenant Reilly, and Officers Wagher, Harper, Gizzi, Santopietro, and Chicano, and a K-9 Unit arrived at plaintiff's cell at GCI.

Defendant Lieutenant Reilly was the assigned supervisor of the CET, which was instructed to move several inmates to Administrative Detention cells for investigation into suspected gang affiliation.  All members of this CET were employees of GCI and experienced in cell extractions.

Once at plaintiff's cell, Lieutentant Reilly gave verbal orders to plaintiff to lie face down on the bunk.  Plaintiff shouted, "I didn't do nothing."  Lieutenant Reilly replied, "I didn't say you did," and he informed plaintiff that he was on Administrative Detention pending investigation.  Lieutenant Reilly again, and continuously thereafter, verbally instructed plaintiff to lie down on the bunk.  Plaintiff refused to comply and threw a chair at the door.

---

[2]Defendants also assert that summary judgment is appropriate on the basis of the relevant statute of limitations and on the merits of the claims.  The Court need not consider these arguments because it agrees that plaintiff failed to exhaust his administrative remedies as required by the PLRA.

2

Lieutenant Reilly instructed plaintiff to lie on his bunk and to "do it now." Plaintiff did not comply. Lieutenant Reilly again instructed plaintiff to lie on his bunk and notified plaintiff that chemical agents would be utilized if he continued not to comply. Plaintiff did not lie down on the bunk.

Lieutenant Reilly sprayed chemical agent MK4 First Defense into the cell, and he again instructed plaintiff to lie down on the bunk. Plaintiff did not comply, instead he shouted, "this stuff don't do shit to me," while hitting his chest with his hand.

Lieutenant Reilly again ordered plaintiff to lie down on the bunk. Plaintiff still refused.

Lieutenant Reilly then released another burst of MK-4 First Defense into the cell. At this time, CET members managed to remove the chair plaintiff had previously thrown.

Lieutenant Reilly gave plaintiff approximately six additional orders to "lie down on the bunk." He warned that a chemical agent would be used if he did not comply, and he ordered plaintiff to show his hands. Plaintiff responded by turning around to face Lieutenant Reilly with the middle finger of each hand extended. Once again, Lieutenant Reilly ordered plaintiff to "lie down on the bunk."

Lieutenant Reilly then sprayed bursts of Z-305 Cap-Stun. At this time, the CET moved into the cell. After struggling with plaintiff, the CET brought plaintiff to the prone position and applied handcuffs and leg irons. Plaintiff then exited the cell with handcuffs and leg irons on.

The CET was in plaintiff's cell for approximately 2 minutes and 5 seconds.

Lieutenant Reilly and the CET escorted plaintiff to the decontamination area and then to a cell in Administrative Detention. Plaintiff walked without assistance despite

3

being handcuffed and having leg irons on.  While walking, plaintiff called the CET officers a "fuckin' bunch of faggots."  Plaintiff also said:  "it wasn't that bad;" "actually, it was kinda fun;" and "my ma works for the board of ed… I'm connected you fuckin' scuzzes."

During the walk to decontamination, plaintiff passed by two medical staff members, one of whom stopped to talk to him.

After decontamination, plaintiff was brought to an administrative detention cell and placed in a change of clothing.

Medical reports from April 14, 15, 19 and 20 reflect that plaintiff was assessed by medical staff.  The April 14 report states that plaintiff was "at risk for skin integrity."  The April 15 report indicates that plaintiff's skin was intact although plaintiff had indentations on his wrists.  The April 19 and 20 reports note that plaintiff's skin was intact and that he had no swelling.

Connecticut Department of Correction Administrative Directive 9.6 provides inmates with an administrative procedure to seek redress of grievances.  Directive 9.6 defines a grievance as "a written complaint filed by an inmate on the inmate's own behalf in accordance with the procedures stated herein."  It states that the grievance process "must be utilized" for any matter concerning interpretation, application and existence or substance of policies, rules and procedures; employee and inmate actions; privileges, programs and living conditions; property loss; and complaints about prison life.  A non-emergency Level 1 grievance may be filed within 30 days of the incident or discovery of the cause of the grievance.

The Directive provides that an "Emergency Grievance" is "processed by expedited methods to resolve a threat of death or injury; (2) a threat of disruption of facility operations; or (3) a need for prompt disposition because the time is lapsing when meaningful action or decision is possible." An inmate filing an emergency grievance must plainly indicate it as such. Such a grievance requires action within an eight hour period followed by a written response within three business days. At section 18, the Directive states:

> If a grievance submitted as an emergency is ruled at any level not to be an emergency, it shall be returned to the grievant stating that the grievance is not an emergency and the reasons why. The response shall indicate that the grievance may be resubmitted as a regular grievance. No emergency grievance shall be rejected solely for failure to follow the procedures in the Inmate Grievance Procedure and any unit directives.

Pursuant to Directive 9.6, an inmate must exhaust his remedies according to a three-level system of administrative review. It also instructs inmates that a grievance must be filed on either an Inmate Grievance Form CN 9601/1 (applicable to Level 1) or CN 9601/2 (applicable to Level 2 and 3). Each of these forms provides four blank boxes for the inmate to check next to four of the following designations: (1) Line Grievance, (2) Line Emergency, (3) Health Grievance or (4) Health Emergency.[3]

An inmate may appeal a Level 1 disposition to Level 2 within five calendar days of the receipt of the decision. Level 2 is the final level of appeal for all grievances except appeals that challenge departmental policies; appeals of emergency grievances

---

[3] The Directive distinguishes the review of medical and non-medical grievances by providing that a medical grievance is reviewed by an appropriate Health Services Administrator, while a non-medical line grievance filed by an inmate confined in a Connecticut facility is reviewed by the Deputy Commissioner.

5

which cannot be acted upon at a lower level; appeals challenging the integrity of the grievance procedure; and appeals for which a timely response to a Level 2 grievance has not been received.

On April 17, plaintiff filed a grievance designated as a Line Emergency Grievance, stating that he "was a victim of excessive force," and "was kick[ed] almost to death by officers." He requested an investigation of the incident, that suspensions be ordered, and that the governor be informed of the incident.

On April 26, Counselor Herbert, Line Grievance Coordinator, wrote to plaintiff stating that the grievance that he had submitted as a Line Emergency did not meet the criteria of an emergency as set forth in Administrative Directive 9.6. Plaintiff was informed that he could resubmit his grievance as a Line Grievance.

On April 28, plaintiff filed an Inmate Grievance Form B, Levels 2 and 3. He indicated that he again filed a Line Emergency Grievance and that he had suffered a life threatening injury or brain damage. He also requested an MRI. On April 28, Herbert informed plaintiff that his grievance was not properly classified as a Line Emergency Grievance and that plaintiff could resubmit his grievance as a Line Grievance.

On April 29, 2005, plaintiff submitted an appeal of this denial, stating that he appealed the prior decisions because they "failed to acknowledge" his injuries and the "seriousness of the damage." On May 5, 2005, Herbert notified plaintiff that his grievance was not properly classified as a Line Emergency and informed him that he could resubmit his issue as a Line Grievance.

On May 5, plaintiff filed a Level 1 Line Grievance, which asserted a violation of policy that led to excessive force on April 14. He requested an MRI. On May 25, then-

6

Warden James Dzurenda denied plaintiff's grievance because his "claim of excessive force has been thoroughly investigated" and there was "no basis" for such claim.

Plaintiff did not file a Level 1 or 2 Line Grievance.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc., 664 F.2d at 351. In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson, 477 U.S. at 255.

If a nonmoving party has failed to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving

party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 249.

The PLRA requires that prison inmates exhaust administrative remedies prior to seeking relief in federal court.  See 42 U.S.C. § 1997e(a).  The PLRA mandates "proper exhaustion, which means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."  Hernandez v. Cofey, 582 F.3d 303, 305 (2d Cir. 2009).  This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  The failure to exhaust may be excused only where: (1) administrative remedies were not in fact available; (2) prison officials have forfeited, or are estopped by their own actions from raising the affirmative defense of non-exhaustion; or (3) special circumstances justify the prisoner's failure to comply with administrative procedural requirements.  Hemphil v. New York, 380 F.3d 680, 686 (2d Cir. 2004).

In this instance, plaintiff did not exhaust his administrative remedies because he did not complete the steps of administrative review by filing a Level 2 Line Grievance. The undisputed facts establish that plaintiff did not follow the proper grievance procedure.  As required by the Directive, plaintiff was timely informed that his grievance did not qualify as an emergency grievance and that he should file a Level 1 Line Grievance.  As a result of plaintiff's failure to complete the grievance process relative to his claim of excessive force on April 14, 2005, plaintiff's grievance was not fully addressed on the merits by an administrative appeal.

None of the exceptions identified in Hemphill apply. Administrative remedies were available to plaintiff, and Directive 9.6 applied to plaintiff's claim as a grievance concerning employee actions or a complaint about prison life. Defendants did not forfeit the defense because they raised the affirmative defense of failure to exhaust in their answer. No evidence suggests that defendants should be estopped from raising such defense by inhibiting plaintiff's ability to exhaust. In fact, plaintiff was instructed numerous times that his emergency grievance was rejected and that he should file a Level 1 Line Grievance. Further, the record reveals no evidence to support an inference that the circumstances excuse plaintiff's failure to exhaust his administrative remedies properly and completely. Accordingly, the motion for summary judgment will be granted due to plaintiff's failure to exhaust his administrative remedies in compliance with the PLRA.

## **CONCLUSION**

In light of the foregoing, the Court GRANTS the motion for summary judgment [doc. # 53]. The clerk is instructed to close this case.

_____/s/_____
Warren W. Eginton
Senior United States District Judge

Dated this _27th___ day of July, 2010 in Bridgeport, Connecticut.